## STATE v. PATTERSON.

The arrival of a vessel at New Orleans, after refusing to obey the orders to remain in quarantine at the Quarantine Station, in the parish of Plaquemines, is an offence committed in the parish of Orleans, and triable in the First District Court of New Orleans. Session Acts 1855, p. 316, § 6.

The proclamation of the Governor is the only evidence admissible to prove that the port of departure of the vessel was an infected place ; but, being matter of evidence, it need not be set forth in the information.

APPEAL from the First District Court of New Orleans, *Hunt*, J.
*E. W. Moïse*, Attorney General, for the State. *W. D. Hennen* and *W. H. Hunt*, for appellant.

BUCHANAN, J. An information, filed by the Attorney General in the First District Court of New Orleans, charged that the defendant arrived at the Quarantine Ground in the parish of Plaquemines, with the steamship Star of the West, under his command, on the 28th July, 1856, from an infected place, to wit, from Havana, in the Island of Cuba ; that he was directed by the proper officer at the Quarantine Station to anchor his ship at the Quarantine ground, and there to remain with his ship during the period assigned by law for her quarantine, to wit, ten days ; " all of which the said *Patterson*, master as aforesaid, neglected and refused to do,—but, before the expiration of the ten days aforesaid, brought his said ship to the port and city of New Orleans, contrary to the form of the statute."

Defendant having been convicted upon this information, by the verdict of the jury, moved in arrest of judgment on the two following grounds :

1st, That the First District Court of New Orleans was without jurisdiction to try the cause.

2d. That the offence charged in the information, is not charged with legal certainty.

I. The argument of defendant's counsel upon the first ground divides itself into two branches, namely : that the prosecution is based upon alleged violations of the Act to establish quarantine laws for the protection of the State, (Session Acts of 1855, No. 336) ; that by the 19th section of that Act, all violations of the same, at the Quarantine Station on the Mississippi River, and at the Rigolets, are triable by *the Criminal Court of New Orleans*, not by the First District Court of New Orleans.

But granting that the First District Court of New Orleans was the court intended by the Legislature, it is urged that the conferring upon that court, of jurisdiction over offences committed in the parish of Plaquemines, is contrary to Article 103 of the Constitution, which declares, that the accused shall have a speedy public trial by an impartial jury *of the vicinage :*—meaning, of the parish where the offence was committed.

Both these branches of the argument take for granted that the offence is charged to have been committed in the parish of Plaquemines, at the Quarantine Station on the Mississippi River, within the limits of that parish.

But such does not appear to be the fact. The information charges that the defendant, being ordered by the proper authority at the Quarantine Station to come to anchor, and to remain at said station for the space of ten days, not only

refused to obey said orders, but brought his vessel to New Orleans, before the expiration of the ten days. The offence is therefore charged as having been complete only upon the arrival of the steamship Star of the West at New Orleans ; and in so charging, the information followed the words of the statute, which says, section 13, page 474 : " Every master of a vessel, subject to a quarantine or visitation, *arriving in the port of New Orleans*, who shall refuse or neglect either, first, to proceed with or anchor his vessel at the place designated for quarantine at the time of his arrival; second, to submit his vessel, cargo and passengers to the examination of the physician, and to furnish all necessary information to enable that officer to determine what quarantine shall be fixed for his vessel ; third, to remain with his vessel at the quarantine ground during the period assigned for her quarantine, &c., shall be guilty of a misdemeanor, and be punished, &c."

The refusal to obey the orders to remain in quarantine was, therefore, no offence against the statute, unless the vessel arrived in the port of New Orleans. The arrival of the Star of the West at New Orleans was an offence committed in the parish of Orleans, and triable in the First District Court of New Orleans, in which this prosecution was instituted. Acts 1855, p. 316, § 6.

II. It is said the description of the offence in the information was wanting in legal certainty in this : that it avers the steamship Star of the West came " from an infected place," instead of averring, as it should have done, that the steamship came " from a place which had been proclaimed by the Governor of the State to be an infected place."

The 13th section of the Quarantine Act, upon which the prosecution is based, commences by enacting that the Governor shall issue his proclamation, upon the advice of the Board of Health, declaring any " place where there shall be reason to believe a pestilential, contagious or infectious disease exists, to be an infected place, &c." The section applies to vessels arriving " from such infected place." In a prosecution upon this section, it is plain that the only evidence admissible to prove that the port of departure of the vessel was an infected place, is the proclamation of the Governor. But this matter of evidence needs not be set forth in the information. The State is not obliged to give notice to the accused, in the act of accusation or indictment, of the evidence by which it is intended to support the accusation. 1st Chitty, 231.

Judgment affirmed, with costs.